UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case<br>) No. 05-63272-fra13 |
| JEFFREY LEISHMAN, | )<br>) MEMORANDUM OPINION |
| Debtor. | ) |

## BACKGROUND

The Debtor was married for 21 years to Mary E. Leishman. The marriage was terminated by a decree of dissolution entered by the Circuit Court in Lane County, Oregon, in March 1998. Through the ups and downs of their economic lives, each of the parties, at various times, assumed the role of principal breadwinner. However, by the time the marriage ended, Mr. Leishman had his own business and was the principal earner.

The parties negotiated a settlement of their differences which took the form of a stipulated judgment of dissolution of marriage entered by the Circuit Court on May 13, 1998. After the petition for dissolution had been filed, the Circuit Court awarded temporary spousal support in

/ / / / /

/ / / / /

Page 1 - Memorandum Opinion

the sum of $650 per month.  Ms. Leishman wanted the final judgment to provide for permanent spousal support.  Mr. Leishman opposed the idea.[1]

The judgment itself contained the following pertinent provisions:

> 8. <u>Spousal Support</u>. Neither party shall pay spousal support to the other and a judgment in lieu of spousal support is awarded to Respondent as described below in paragraph 9.
>
> 9. <u>Equalizing Judgment</u>. Judgment is hereby entered in favor of Respondent [Mary Leishman] and against Petitioner [Jeffrey Leishman] in the amount of $52,500.  This Judgment reflects an unequal division of personal property as well as a lump sum contribution to Respondent in lieu of spousal support.  The amount of the Judgment is based, in part, on the value of the income and non-income producing assets awarded to Petitioner, the long term marriage between the parties, and the current earning disparities as reported by the parties.
>
> Beginning June 1, 1998, and on the first day of each month thereafter, Petitioner shall pay $500 per month to Respondent as payment towards this Judgment until November 1, 1998, at which time the entire Judgment shall be due and payable.  The Judgment shall bear interest at nine percent (9%) per annum, simple statutory interest, from May 1, 1998 until paid, unless the full Judgment is paid on or before November 1, 1998 in which event all interest shall be waived.
>
> Notwithstanding the foregoing, if Petitioner pays $10,000 to Respondent on the Judgment between now and 5:00 p.m. May 31, 1998, the Judgment shall be discounted by $3,000.
>
> 13. <u>Businesses</u>. Respondent is awarded all interest in the business known as "2 the Rescue" free and clear of any interest by Petitioner and Respondent shall pay any and all debt owing on that business and hold the Petitioner harmless therefrom.  Petitioner is awarded all interest in the business known as "Leishman Drywall Co., Inc." free and clear of any interest

---

[1] It was testified, without contradiction, that his response to the proposal was "it will be a cold day in Hell before I write monthly checks to [Ms. Leishman]."

Page 2 - Memorandum Opinion

> therein by Respondent and Petitioner shall pay any and all debt owing on that business and hold the Respondent harmless therefrom. Petitioner shall pledge the shares in Leishman Drywall Co., Inc. as security for the payment of the Equalizing Judgment referred to in paragraph 9 above and the shares shall be physically within the offices of Ralph Bradley until the Equalizing Judgment is paid in full.

Ms. Leishman filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 28, 2000 (District of Oregon Case No. 600-65687-aer13). Schedule B accompanying her petition, at Item 17 ("Other Liquidated Debts Owing Debtor") described a judgment as an "equalizing judgment against ex-husband, Lane County Case No. 15-97-10106, current balance of $35,000 plus interest." The current market value of the asset was given as $2,500. Ms. Leishman's bankruptcy attorney testified at the hearing that he arrived at the value taking into account the difficulty in collecting the judgment, and the limited "market" for selling the judgment, which he believed to be limited as a practical matter to the two parties. Only a $400 catch-all exemption was claimed.

Ms. Leishman's plan of reorganization was confirmed and, roughly five years later, she received her discharge.

There were no efforts to collect the judgment during the pendency of the reorganization. Ms. Leishman testified that her then attorneys counseled her that Mr. Leishman was "under ground" and that collection efforts would be fruitless. She did, however, hit pay dirt about two months after receiving her discharge: a writ of garnishment served on Mr. Leishman's bank yielded roughly $16,000.

// // //

Page 3 - Memorandum Opinion

The payment history on the obligation claimed by Ms. Leishman is set out in her Exhibit 5 and may be summarized as follows:

| Date | Amount |
|---|---|
| 3/1/99 | $9,380 |
| 6/1/99 | $4,000 |
| 4/11/05 | $15,602.93 |

This summary makes one change in the exhibit based on the testimony: A $10,000 credit was actually in the sum of $9,380, and was received on March 1, 1999. According to Ms. Leishman's calculations, the current balance due is $50,609.38.

Paragraph 13 of the judgment of dissolution provided that Mr. Leishman's shares in a family corporation, awarded to him by the judgment, would be held as security for payment of the money judgment. When scheduled payments were not made, the shares were surrendered, together with a flat-bed truck (valued by Ms. Leishman at $2,500) and the company's accounts receivable. No evidence was presented as to the value of these accounts. It appears that, prior to the time the shares were turned over, Mr. Leishman commenced a "winding down" of the company (his words), to the point that it was virtually inactive at the time the shares were delivered. He maintains that there was substantial "good will" in the company, but presented no evidence as to the value thereof.

## ISSUES

Ms. Leishman has filed a proof of claim in the amount of $50,609.38. She claims that the claim should be viewed as in the nature of spousal support, and accorded priority status under Code § 507.

// // //

Page 4 - Memorandum Opinion

1 | Mr. Leishman objects to the claim on the following grounds:

2 |     A. The claim is in the nature of a property division, and not spousal support;

4 |     B. Having claimed in her own bankruptcy that the judgment is worth only $2,500, and is not in the nature of support, Ms. Leishman is judicially estopped from claiming otherwise in this proceeding.

## DISCUSSION

A. The Claim is in the Nature of Spousal Support.

A determination of whether an obligation is in the nature of support is a matter of federal, not state, law. <u>In re Gibson</u>, 103 B.R. 218 (BAP 9th Cir. 1989). "In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation." <u>Shaver v. Shaver</u>, 736 F.2d 1314, 1316 (9th Cir. 1984). The nature of the obligation should be determined in light of the circumstances in existence at the time the parties entered into the agreement. <u>In re Combs</u>, 101 B.R. 609, 615 (BAP 9th Cir. 1989).

The <u>Shaver</u> court, 736 F.2d at 1316, listed a number of factors a court may consider in determining the nature of the obligation:

1. "[I]f an agreement fails to provide explicitly for spousal support, a court may presume that a so-called 'property settlement' is intended for support when the circumstances of the case indicate that the recipient spouse needs support."

The agreement between the Leishmans provides that neither party will pay spousal support - not surprising given Mr. Leishman's stated

// // //

Page 5 - Memorandum Opinion

aversion to traditional monthly alimony - but that an equalizing judgment "in lieu of spousal support" will be awarded to Ms. Leishman. It is clear that the exclusion of spousal support in paragraph 8 refers only to a regime of monthly payments, and that the lump sum was intended for Mrs. Leishman's support.

2. Factor two is whether the facts indicate that support is necessary, such as "the presence of minor children and an imbalance in the relative income of the parties."

The "equalizing judgment" awarded to Ms. Leishman provides that it is based on the long-term marriage of the parties, the current earning disparities of the parties, and the differential in income production of the assets awarded. In other words, the award was based on Ms. Leishman's current need for support.

3. Factor three: '[I]f an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support."

The award was payable in full approximately six months after the effective date of the judgment. By its terms, the obligation to pay does not terminate by the death or remarriage of Ms. Leishman.

4. Factor four: looks to the nature and duration of the obligation. Support payments are "generally made directly to the recipient spouse and are paid in instalments over a substantial period of time."

The award is payable in monthly instalments for the first six months, with a lump sum of the balance then due.

// // //

Page 6 - Memorandum Opinion

While the terms of the obligation do not conform to the traditional idea of alimony, spousal support may, however, be awarded for a limited duration - perhaps more so now than in 1984 when the Shaver opinion was written. In addition, there are many reasons that an award in the nature of support may be characterized as other than alimony - e.g. differences in tax treatment, that fact that alimony may be subject to modification based on future need, or that the obligation to pay alimony may be ended after ten years in certain circumstances. ORS 107.407. Given the fact that the award was made "in lieu of spousal support,"[2] and by its own terms was based on Ms. Leishman's need for support, I find that the obligation is in the nature of support.

B. Judicial Estoppel Not Applicable.

"Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." Cheng v. K & S Diversified Investments, Inc.(In re Cheng), 308 B.R. 448, 452 (BAP 9th Cir. 2004)(internal citations omitted).

> There are three general approaches to judicial estoppel: (1) requiring (like equitable estoppel) that the party injured by the changed position have relied on the first position, (2) merely requiring that the court have relied on, i.e. accepted, the earlier position; and (3) encompassing unseemly adversary behavior that constitutes 'playing fast and loose' with the court.

---

[2] Note that "in lieu of" means in place of, but not "instead of."

Page 7 - Memorandum Opinion

Id. at 453 (internal citation omitted). The BAP then stated that the second alternative appears to be gaining dominance. Id.

### The Amount of the Obligation

Ms. Leishman, in her earlier bankruptcy, listed the balance due on her judgment at $35,000 plus interest, but valued it at only $2,500. While she did obtain a sizable garnishment after her bankruptcy ended, there was no evidence presented that the estimate of value made at the time she filed bankruptcy was not accurate given the facts then known, or was otherwise made with the intent to mislead the court or other parties in interest. It is not inconsistent to value an asset in a debtor's own schedules at less than the "book" value of the asset and later, when filing a proof of claim, to assert the total amount owing. In fact, that is precisely what one may be directed to do.

### The Nature of the Obligation

In her own bankruptcy, Ms. Leishman characterized the obligation as an equalizing judgment, as it was nominally depicted in the judgment of dissolution. As an equalizing judgment is not subject to a specific exemption under Oregon law, only the $400 "wild card" exemption was claimed against it. $2,100 of its value was included in the calculation of the "Best Interest of Creditors" test at Code § 1325(a)(4), used to calculate the minimum payment which must be made to unsecured creditors in a Chapter 13 bankruptcy. Had the obligation been characterized as support, it would arguably have been wholly exempt under
// // //
// // //
// // //

Page 8 - Memorandum Opinion

the support exemption[3], ORS 18.345(1)(i), and no part of its value would have been included in the "Best Interest of Creditors" test. Even if the obligation had been characterized as support, but no exemption claimed, Ms. Leishman would have been no better off, as the Best Interest of Creditors test would have been unchanged, given her good faith estimate of a $2,500 value. As Ms. Leishman gained no advantage in claiming the obligation as an equalizing judgment in her previous bankruptcy, the bankruptcy court in that case did not rely on her characterization of the obligation in confirming her plan of reorganization. Judicial estoppel will not be applied in this case to require that the obligation be characterized as other than support.

## CONCLUSION

For the reasons given above, I will not invoke judicial estoppel in this case to require that the claim filed by Mary Leishman be characterized as other than support in the amount claimed. Debtor's objection to the claim of Ms. Leishman is denied. Counsel for Ms. Leishman shall file a form of order in accordance with this Memorandum Opinion.

FRANK R. ALLEY, III
Bankruptcy Judge

---

[3] ORS 18.345(1)(i) provides that "Spousal support, child support, or separate maintenance [is exempt from execution] to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." It is unclear whether, under Oregon law, an obligation "in the nature of support," but characterized in a judgment of dissolution as something else, is subject to the support exemption. This court has found no Oregon case on point. However, spousal support is defined at ORS 107.105(1)(d) as "an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both," a definition which one could argue entitles the recipient to claim the support exemption if the award is based on the factors used to determine a need for support.

Page 9 - Memorandum Opinion